IRA L. GOTTLIEB (SBN 103236)
buddyg@bushgottlieb.com
JULIE GUTMAN DICKINSON (SBN 148267)
jgd@bushgottlieb.com
HECTOR DE HARO (SBN 300048)
hdeharo@bushgottlieb.com
SAMANTHA M. KENG (SBN 341550)
skeng@bushgottlieb.com
Bush Gottlieb
A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203
Telephone: (818) 973-3200
Facsimile: (818) 973-3201
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| URIEL GRANADOS PEREZ, IRIS ORTEGA, and HECTOR VALENZUELA, on behalf of themselves and a putative class of similarly situated former employees, <br><br> Plaintiffs, <br><br> vs. <br><br> SDLA COURIER SERVICE, INC., AMAZON.COM SERVICES LLC, AMAZON LOGISTICS, INC., and AMAZON.COM, INC., as Joint Employers, <br><br> Defendants. | Case No.  **2:24-cv-09910** <br><br> **CLASS ACTION COMPLAINT (WARN ACT)** <br><br> JURY DEMANDED |

Uriel Granados Perez, Iris Ortega, and Hector Valenzuela (the "Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees as defined herein, bring this suit against SDLA Courier Service, Inc. ("SDLA"), Amazon.com

1172338v13  10999-34001

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Services LLC, Amazon Logistics, Inc., and Amazon.com, Inc., as Joint Employers (collectively, all Amazon entities shall be referred to as "Amazon" and collectively with SDLA they shall be referred to as the "Defendants"). By way of this Class Action Complaint, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      This is a Class Action Complaint brought under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101, *et seq.*, the California Worker Adjustment and Retraining Notification Act (the "Cal-WARN Act"), California Labor Code § 1400, *et seq.*, California Labor Code § 201, *et seq.*, and Nevada Revised Statutes § 608.020, *et seq.*, by the Plaintiffs on their own behalf and on behalf of other similarly situated persons against SDLA and Amazon, their joint employers.

2.      Through Amazon's Delivery Service Partner ("DSP") program, SDLA provided delivery services for Amazon, a multinational company, across the Southern California region and in Nevada. As described in greater detail below, given the nature of the relationship between SDLA and Amazon, Amazon is the joint employer of the Plaintiffs and the putative class of drivers and dispatchers.

3.      On or about August 5, 2024, SDLA informed its drivers and dispatchers that the company would cease operations that same day. Approximately 500 drivers and dispatchers across Southern California and in Nevada are impacted by this mass layoff, including employees who lived and worked in this judicial district at relevant times.

4.      Defendants thus failed to provide 60 days' advance written notice of the mass layoff to the affected employees and to any other parties as required by the WARN Act and the Cal-WARN Act.

5.      Following the abrupt announcement that SDLA operations would cease in their entirety, the impacted drivers and dispatchers did not receive their final paychecks on the last day of SDLA operations, which was August 5, 2024. SDLA informed a portion of the impacted drivers and dispatchers that they were not receiving their paychecks on the last day of SDLA's operations because Amazon had cut off SDLA's access to its payroll

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
COMPLAINT

1  processor. SDLA did not issue what it asserted were final paychecks to its drivers and

2  dispatchers until sometime between August 13 and August 16, 2024. As of the time of the

3  filing of this Class Action Complaint, Defendants have failed to provide a number of

4  affected employees all compensation owed them.

5        6.      Defendants thus failed to timely pay affected employees their final wages in

6  full upon termination as required by California Labor Code § 201 and Nevada Revised

7  Statutes § 608.050, exposing Defendants to waiting time penalties under California and

8  Nevada law.

9  **JURISDICTION AND VENUE**

10        7.      This Court has original jurisdiction over the WARN Act claim pursuant to 28

11  U.S.C. §§ 1331, 1337, and 29 U.S.C. § 2104(a)(5).

12        8.      This Court has supplemental jurisdiction over the state law Cal-WARN Act

13  claim pursuant to 28 U.S.C. § 1367. The Cal-WARN Act provides for a private right of

14  action in a court of competent jurisdiction. California Labor Code § 1404.

15        9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

16  the state law claim for late payment of wages. California law allows plaintiffs to file a civil

17  claim for late payment of wages. California Labor Code § 203(b). Nevada law allows for

18  the same. Nevada Revised Statutes § 608.135.

19        10.     Venue is proper in this district pursuant to 28 U.S.C. § 123(b) and 29 U.S.C.

20  § 2104(a)(5).

21  **PARTIES**

22        11.     Plaintiff **Uriel Granados Perez** is a resident of the United States and lives in

23  Los Angeles County, California. Plaintiff Granados Perez was employed by SDLA and

24  Amazon at all relevant times for more than six months prior to August 5, 2024. Plaintiff

25  Granados Perez is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7)

26  because he did not receive the notice required in 29 U.S.C. § 2102(a). Plaintiff Granados

27  Perez is a "person" within the meaning of California Labor Code § 1404 who may bring a

28  civil action to establish liability against an employer for violations of the Cal-WARN Act.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    Plaintiff Granados Perez is a discharged "employee" within the meaning of California

2    Labor Code § 201 who may bring an action for waiting time penalties pursuant to § 203.

3        12.    Plaintiff **Iris Ortega** is a resident of the United States and lives in Riverside

4    County, California. Plaintiff Ortega was employed by SDLA and Amazon at all relevant

5    times and for more than six months prior to August 5, 2024. Plaintiff Ortega is an

6    "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7) because she did not

7    receive the notice required in 29 U.S.C. § 2102(a). Plaintiff Ortega is a "person" within the

8    meaning of California Labor Code § 1404 who may bring a civil action to establish

9    liability against an employer for violations of the Cal-WARN Act. Plaintiff Ortega is a

10    discharged "employee" within the meaning of California Labor Code § 201 who may bring

11    an action for waiting time penalties pursuant to § 203.

12        13.    Plaintiff **Hector Valenzuela** is a resident of the United States and lives in

13    Clark County, Nevada. Plaintiff Valenzuela was employed by SDLA and Amazon at all

14    relevant times for more than six months prior to August 5, 2024. Plaintiff Valenzuela is an

15    "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7) because he did not

16    receive the notice required in 29 U.S.C. § 2102(a). Plaintiff Valenzuela is a discharged

17    "employee" within the meaning of Nevada Revised Statutes § 608.020, *et seq.*, who may

18    bring an action for waiting time penalties pursuant to Nevada Revised Statutes § 608.020,

19    *et seq.*

20        14.    Defendant SDLA Courier Services, Inc. is a California stock corporation

21    with its principal address listed with the California Secretary of State as 1865 West 222nd

22    Street, Suite B, Torrance, California 90501. It may be served via its registered agent in

23    California, Capitol Corporate Services, Inc., at 455 Capitol Mall Complex, Suite 217,

24    Sacramento, California 95814. SDLA is a direct delivery service provider for Amazon that

25    operated within this judicial district at relevant times.

26        15.    Defendant Amazon.com, Inc. is a Delaware corporation with its principal

27    place of business located at 410 Terry Avenue North, Seattle, Washington 98109. It may

28    be served via its registered agent in Washington, Corporation Service Company, at 300

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Deschutes Way Southwest, Suite 208 MC-CSC1, Tumwater, Washington, 98501 or its registered agent in California, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Sacramento, California 95833. Amazon.com, Inc. is the largest online retailer in the United States and is engaged in the selling of products with delivery to residences and businesses via a large network of delivery agents throughout the United States, including operations within this judicial district at relevant times.

16.     Defendant Amazon Logistics, Inc. is a Delaware corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. It may be served via its registered agent in California, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Sacramento, California 95833. Upon information and belief, Amazon Logistics, Inc. is engaged in running Amazon's Delivery Service Partner program throughout the United States, including operations within this judicial district at relevant times.

17.     Defendant Amazon.com Services, LLC is a Delaware corporation with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. It may be served via its registered agent in California, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Drive, Sacramento, California 95833. Upon information and belief, Amazon.com Services, LLC is engaged in running Amazon's e-commerce and delivery business throughout the United States, including operations within this judicial district at relevant times.

## **FACTS**

### **SDLA and Amazon are Joint Employers of the Affected Employees.**

18.     SDLA is a DSP for Amazon. SDLA formed as a carrier in or around 2015. On information and belief, SDLA delivered packages for Amazon for approximately eight years prior to its closure. SDLA provided delivery services for Amazon customers throughout Southern California and in Nevada.

19.     Immediately before its closure in August 2024, SDLA dispatched drivers from five Amazon delivery stations across Southern California and from one station in Las

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    Vegas, Nevada. These stations included the City of Industry Amazon station (DAX5)

2    located at 15930 Valley Boulevard, City of Industry, California, 91744; the Glendale

3    Amazon station (DLX5) located at 4841 West San Fernando Road, Los Angeles,

4    California 90039; the Hawthorne Amazon station (DLA8) located at 2815 West El

5    Segundo Boulevard, Hawthorne, California 90250; the Perris Amazon station (LGB9)

6    located at 4375 North Perris Boulevard, Perris, California 92571; the Santa Clarita

7    Amazon station (XLX3) located at 21590 Needham Ranch Parkway, Santa Clarita,

8    California 91321; and the Las Vegas Amazon station (DLV4) located at 11500 Bermuda

9    Road, Henderson, Nevada 89052. Each Amazon station is assigned a warehouse code, as

10   indicated in parentheses.

11       20.    Amazon stations, each of which house multiple DSPs, serve as hubs where

12   DSP drivers go to load their delivery vehicles with packages. These stations are staffed by

13   Amazon warehouse employees and supervised by Amazon station managers.

14       21.    Amazon launched its DSP program in or around 2018. Amazon describes its

15   DSP program to potential DSP owners as follows: "When customers make their purchases

16   online, Amazon's people, technology, and operations work together to fulfill their orders.

17   The items are packed at fulfillment centers and then sent to delivery stations. At the

18   delivery stations, packages are prepared to be loaded into delivery vehicles, which is where

19   you come in. Each morning, you'll lead your team of delivery associates as they load

20   packages into their vehicles and deliver them to customers' homes and businesses."

21       22.    In other words, DSPs deliver Amazon packages ordered on Amazon's online

22   platform to Amazon's customers. According to Amazon, there are over 3,500 DSPs

23   operating out of Amazon's facilities globally, employing 275,000 drivers delivering

24   Amazon packages. These DSPs are an integral and integrated part of Amazon's operations,

25   comprising approximately 50% or more of Amazon's deliveries.

26       23.    Upon information and belief, rather than contract with existing delivery

27   companies, Amazon seeks minimally capitalized individuals who create new legal

28   entities—the DSPs—subject to Amazon's control. Amazon subsidizes its DSPs by

providing benefits and services, training, business coaching, logistics expertise, and on-road support for all DSPs. Further, Amazon negotiates with outside service providers to provide DSPs with discounts on the instrumentalities and services required to perform their work, including the Amazon-branded leased/rented vehicles the DSPs use to deliver Amazon packages, insurance, handheld communications devices used by DSP drivers, Amazon-branded uniforms that Amazon requires DSP employees to wear, payroll processing and tax services, and legal representation for labor and employment issues.

24.     Amazon controls DSP labor relations through its DSP Navigator Program, which it describes on page 53 of its DSP Operations Manual, dated December 19, 2019, as "a suite of . . . labor and employment services for DSPs in the United States," including "access to a live HR and labor and employment legal support hotline . . . to advise on the day-to-day challenges of managing a workforce . . . access to an online labor and employment knowledge bank and training programs," and "full legal representation" by the "Ogletree Deakins law firm in labor and employment matters including, for example, employment lawsuits, wage and hour claims, and labor and employment agency proceedings."

25.     Pursuant to Amazon's DSP Operations Manual and Amazon's U.S. Program Policies, dated March 2021, Amazon exercises control over the DSP's hiring process by setting standards for the drivers that DSPs can hire, and by retaining veto power over any drivers a DSP seeks to hire. Amazon dictates that DSPs hire their drivers as employees instead of independent contractors, and Amazon requires that these employees work under an at-will discharge policy.

26.     Pursuant to Amazon's DSP Operations Manual and Amazon's U.S. Program Policies, Amazon sets the minimum hourly wage that DSPs are allowed to pay their drivers and prohibits DSPs from paying drivers on a per-route or per-day basis. Amazon also sets other minimum benefits that DSPs must provide to their employees, such as a minimum paid time off requirement and healthcare coverage that exceeds what the DSP is required to provide under applicable law.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

27.     Pursuant to Amazon's DSP Operations Manual and Amazon's U.S. Program Policies, Amazon determines and dictates how DSP employees must complete their work. Amazon requires that DSP drivers complete Amazon-led trainings at Amazon's facilities and requires certain training and online courses both at onboarding and on a continuing basis. Amazon sets detailed policies for how DSP employees must perform their work, such as safety standards and standards of professional conduct.

28.     Amazon provides and/or subsidizes the provision of portable electronic devices for DSPs to distribute to drivers for their use while working. Amazon transmits route assignments to drivers through these devices and monitors the devices to track drivers' movements, adherence to safety standards, and performance metrics. Amazon also requires that DSPs deploy panoptic surveillance cameras in the delivery vehicles they use, which Amazon monitors.

29.     Amazon knows that safety is important for DSP drivers and admits that safety is a "dual commitment" from Amazon and the DSPs "to create a safe work environment and great experience for our customers." Moreover, Amazon has also stated that: "We've invested in advanced safety technology to help keep delivery associates safe on the road, and have developed a program and metrics to ensure safety is a top priority for everyone. As [a DSP], it's up to you to create a safe, productive, and inclusive work environment while ensuring your team of delivery associates meets performance and safety standards at every stop on their routes."

30.     Amazon plays a direct role in dictating the hours and day-to-day work of DSP employees. Amazon dictates the shifts during which each DSP will operate at the Amazon stations and the time that each DSP's drivers will be dispatched. When management at the Amazon station, who are employed directly by Amazon, indicate to the dispatchers at each DSP that it is that DSP's turn to load their vans, dispatchers alert the DSP's drivers to head to the Amazon station to begin a process called "load-out."

31.     Load-out is directly supervised by Amazon station employees, who instruct DSP drivers when to exit their vehicles to begin loading. Amazon station employees also

instruct drivers on how much time they have remaining to complete the load-out process, provide them additional directions during the process, and address any issues that arise with drivers' vans or the packages they are loading. Amazon station employees also have the authority to discipline DSP drivers during load-out for offenses such as failing to turn the van engine off or exiting their van before they are instructed to do so.

32.     Each day, Amazon delivers to the respective Amazon station the day's deliveries, where Amazon warehouse employees further sort the deliveries by zip code and create routes with specific time-metrics for how quickly those routes must be completed. On information and belief, Amazon then assigns each DSP a number of routes for the day and each DSP driver their specific route for the day, based on the driver's performance metrics that Amazon tracks. As described in its DSP Operations Manual, when work is particularly heavy, Amazon can require that a DSP's employees work longer shifts.

33.     Once Amazon assigns the routes, DSP drivers use Amazon-labeled blue delivery trucks and vans to deliver Amazon packages. During particularly busy delivery days or periods, DSPs may also utilize rental trucks or vans that do not carry the Amazon insignia. Upon information and belief, Amazon sets up these rental arrangements on behalf of the DSP with major fleet operators like Ryder, Budget, and others, and Amazon pays for the rental of these excess trucks.

34.     DSP drivers use budget Android phones installed with Amazon's Flex App to follow the day's assigned routes and make deliveries. Each phone also carries Amazon's E-Mentor App, which allows Amazon to track the location and status of each delivery and collect detailed metrics about driver performance and compliance with Amazon's safety policies and driving standards.

35.     Amazon also equips delivery trucks and vans with cameras used to surveil and monitor all actions taken by the driver, including whether a driver brakes too hard, whether the driver accelerates too fast, and a host of other data used to supervise a driver's activity while delivering Amazon's products.

36.     These cameras also allow Amazon to monitor any traffic violations

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

committed by drivers, including whether a driver is speeding, is in the wrong lane, passes on a double line, makes an illegal turn, and many other major and minor traffic violations.

37.     Upon information and belief, Amazon also uses this information to monitor drivers' efficiency in delivering packages. Amazon then provides feedback to DSPs as to a driver's efficiency and effectiveness based on information collected through the device and any customer complaints. Amazon issues both DSPs and the DSP's drivers weekly scorecards based on their performance and their compliance with Amazon's policies and procedures, and then plays a role in deciding what corrective action DSPs and their drivers must complete to continue working.

38.     Amazon is a joint employer of SDLA's drivers because, as described above, Amazon:

a     Assigns to drivers the product they will deliver;

b     Provides training to drivers;

c     Dictates how and when drivers will complete their work;

d     Decides drivers' routes and sets time metrics for drivers;

e     Monitors and supervises the drivers' deliveries and every aspect of their performance throughout the day;

f     Maintains information on past performance of drivers and the efficiency with which they make deliveries and uses this information to assign drivers' routes;

g     Monitors and manages the drivers' operation of delivery vehicles, including their compliance with safety standards set by Amazon;

h     Plays a role in drivers' hiring, in dictating any corrective and/or disciplinary action, and in drivers' retention based on their metrics and compliance with Amazon's policies; and

i     Provides training to SDLA on how to operate as a delivery unit and trains and sets policies for SDLA on its basic operations.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

**Defendants Terminate SDLA Drivers and Dispatchers Without 60 Days' Notice**

39.     On August 5, 2024, SDLA alerted its drivers and dispatchers that it would be ceasing operations that same day. SDLA management conveyed this news orally to dispatchers, and instructed them to call drivers who were out on the road to return to the station and send them home. Drivers completing their routes were called back to the Amazon station, where dispatchers conveyed the message that SDLA operations were immediately terminated. Some drivers who were not working that day received a text message notification late in the evening of August 5 notifying them of the same. Certain drivers who did not work on August 5 and were not contacted by dispatchers did not learn about the sudden termination until they showed up to work on August 6, 2024, when they were told by Amazon employees that SDLA had shut down the day before.

40.     SDLA management later communicated to some affected employees that Amazon terminated its contract with three hours' notice on August 5, 2024.

41.     Neither SDLA nor Amazon provided a written 60-day WARN notice to employees, the California Employment Development Department, the Nevada Department of Employment, Training, and Rehabilitation, any local workforce development board, or any chief elected official in any of the areas where mass layoffs occurred.

42.     On information and belief, on August 5, 2024, approximately 500 employees jointly employed by SDLA and Amazon were terminated. This constitutes the entire operating unit, consisting of drivers and dispatchers, at the five SDLA facilities in Southern California and the one SDLA facility in Nevada.

43.     For purposes of WARN Act liability, each Amazon delivery station where SDLA operated constitutes a single site of employment, and the SDLA operations at each delivery station constitute an operating unit because SDLA is a distinct organizational and operational unit handling a distinct product, operation, or specific work as part of Amazon's operations at Amazon's facilities.

44.     As a joint employer, Amazon also had duties under the Federal WARN Act and under the Cal-WARN Act to give timely notice of the SDLA cessation of operations

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

10

COMPLAINT

1  but failed to do so as outlined in the preceding paragraphs.

2  **Defendants Fail to Timely Pay Drivers and Dispatchers Final Wages**

3      45.    SDLA drivers and dispatchers did not receive their final wages on the date

4  that they were laid off, which was August 5, 2024. Most affected employees did not

5  receive their final paychecks until August 15 or August 16, 2024.

6      46.    As of the date of the filing of this Class Action Complaint, Defendants still

7  owe a number of affected employees payment of their full final wages, including but not

8  limited to payment of overtime and payment of accrued earned and unused vacation.

9      47.    As joint employers, SDLA and Amazon each had a duty under California

10  law and under Nevada law to ensure the timely payment of wages to employees upon

11  layoff or termination, but both SDLA and Amazon failed to comply with this duty as

12  outlined in the preceding paragraphs.

13                    **CLASS ACTION ALLEGATIONS**

14      48.    Plaintiffs bring this Action, on behalf of themselves and all other persons

15  similarly situated, as a Class Action pursuant to Federal Rule of Civil Procedure 23.

16  Plaintiffs satisfy the requirements of Rule 23 for the prosecution of this action as a Class

17  Action.

18      49.     Plaintiffs seek to define the class as follows: All hourly, non-exempt

19  employees paid by SDLA who worked at the five California (City of Industry, Glendale,

20  Hawthorne, Perris, and Santa Clarita) and one Nevada (Las Vegas) Amazon delivery

21  stations whose employment was permanently terminated or temporarily suspended within

22  30 days of August 5, 2024 (hereinafter, the "Class").

23      50.    The proposed subclasses are as follows:

24          a    All hourly, non-exempt employees paid by SDLA who worked at the

25  five California (City of Industry, Glendale, Hawthorne, Perris, and Santa Clarita) Amazon

26  delivery stations and whose employment was permanently terminated or temporarily

27  suspended within 30 days of August 5, 2024 (hereinafter the "CA Subclass").

28          b    All hourly, non-exempt employees paid by SDLA who worked at the

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    DLV4 Amazon delivery station in Las Vegas, Nevada whose employment was

2    permanently terminated or temporarily suspended within 30 days of August 5, 2024

3    (hereinafter the "NV Subclass").

4         51.    Class Action treatment of Plaintiffs' claims is appropriate because all of the

5    Class Action requisites under Federal Rule of Civil Procedure 23 are satisfied for the Class

6    and for each subclass.

7              a    The Class includes, upon information and belief, approximately 500

8    Class members, and as such, is so numerous that joinder of all the individual Class

9    members is impracticable under these circumstances, thereby satisfying Federal Rule of

10   Civil Procedure 23(a)(1). The CA Subclass includes, upon information and belief, over

11   400 class members. The NV Subclass includes, upon information and belief, over 75 class

12   members.

13             b    Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because

14   questions of law and fact are common to the Class and to the subclasses, including, inter

15   alia, whether:

16                  i.    Defendants provided adequate notice of its plant closing and/or

17   mass layoff under the WARN Act and the Cal-WARN Act;

18                  ii.   Defendants' actions constitute a "plant closing" as that term is

19   used in the WARN Act and the Cal-WARN Act;

20                  iii.  Defendants' actions constitute a "mass layoff" as that term is

21   used in the WARN Act and the Cal-WARN Act;

22                  iv.   Amazon is a joint employer with SDLA; and

23                  v.    Defendants failed to pay employees all wages due upon

24   termination for the CA Subclass, or within three days of termination for the NV Subclass.

25             c    Plaintiffs are members of the Class and at least one of the subclasses,

26   and their claims are typical of the claims of other Class and subclass members. Each of the

27   subclasses include at least one of the Plaintiffs. Plaintiffs have no interests that are

28   antagonistic to or in conflict with the interests of other Class or subclass members. Thus,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(3).

2    　　　　d　　Plaintiffs will fairly and adequately represent the Class and subclasses

3    and their interests. Moreover, Plaintiffs have retained competent and experienced counsel

4    who will effectively represent the interests of the Class and the subclasses. Thus, Plaintiffs

5    satisfy Federal Rule of Civil Procedure 23(a)(4).

6    　　　　52.　　Class certification is appropriate pursuant to Federal Rule of Civil Procedure

7    23(b)(1) because the prosecution of separate actions by individual Class members would

8    create a risk of inconsistent or varying adjudications, which would establish incompatible

9    standards of conduct for Defendants and/or because adjudications with respect to

10   individual Class members would as a practical matter be dispositive of the interests of non-

11   party Class members.

12   　　　　53.　　Class certification is appropriate pursuant to Federal Rule of Civil Procedure

13   23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the

14   class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the

15   Class as a whole.

16   　　　　54.　　Class certification is appropriate under Federal Rule of Civil Procedure

17   23(b)(3) because common questions of law and fact predominate over any question

18   affecting only individual Class members and because a Class Action is superior to other

19   available methods for the fair and efficient adjudication for this litigation.

20   　　　　　　　　**FIRST CAUSE OF ACTION**

21   **Violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C.**

22   **§ 2101, *et seq.***

23   　　　　　　　　**(WARN Act)**

24   　　　　55.　　Plaintiffs reallege and incorporate by reference each and every allegation set

25   forth in the above paragraphs.

26   　　　　56.　　Defendants are an "employer" within the meaning of the WARN Act. 29

27   U.S.C. § 2101(a)(1).

28   　　　　57.　　Plaintiffs and those they seek to represent were at all relevant times "affected

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    employees" within the meaning of the WARN Act. 29 U.S.C. § 2101(a)(5).

2        58.    The August 5, 2024, closing of SDLA's operations at each of the six

3    Amazon delivery stations in City of Industry, Glendale, Hawthorne, Perris, and Santa

4    Clarita, California and Las Vegas, Nevada constituted a "plant closing" as defined in 29

5    U.S.C. § 2101(a)(2), because it was a permanent or temporary shutdown of a single site of

6    employment or one or more operating units within a single site of employment that

7    resulted in an employment loss for 50 or more employees. In addition, the shutdown has

8    lasted longer than 30 days.

9        59.    To the extent that the August 5, 2024, closing of SDLA's operations at each

10   of the six Amazon delivery stations in City of Industry, Glendale, Hawthorne, Perris, Santa

11   Clarita, and Las Vegas is not a "plant closing" as defined in 29 U.S.C. § 2101(a)(2), the

12   closing constitutes a "mass layoff" as that term is used in 29 U.S.C. § 2101(a)(3), because

13   it resulted in an employment layoff of at least 33 percent of the employees and at least 50

14   employees of SDLA.

15       60.    The August 5, 2024, closing of SDLA's operations at each of the six

16   Amazon delivery stations in City of Industry, Glendale, Hawthorne, Perris, Santa Clarita,

17   and Las Vegas terminated at least 50 employees resulting in "employment losses" as

18   defined in 29 U.S.C. §§ 2101(a)(3)(B)(i)(I) and (II).

19       61.    The WARN Act requires employers to provide 60 days' notice of any plant

20   closing or mass layoff "to each representative of the affected employees . . . or, if there is

21   no such representative at that time, to each affected employee," 29 U.S.C. § 2102(a)(1),

22   and "to the State or entity designated by the State to carry out rapid response activities

23   under [29 U.S.C. §] 3174(a)(2)(A)," as well as to "the chief elected official of the local

24   government within which such closing or layoff is to occur." 29 U.S.C. § 2102(a)(2).

25       62.    On information and belief, prior to August 5, 2024, Defendants did not give

26   any prior written notice of the plant closing and/or mass layoff to any "affected employee,"

27   including Plaintiffs and those they seek to represent, as that term is defined in 29 U.S.C.

28   § 2101(a)(5), nor upon information and belief did Defendants give any prior written notice

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

to the California Employment Development Department, the Nevada Department of Employment, Training, and Rehabilitation, or to the chief elected official of the local government within which the mass layoff was ordered.

63.    Defendants violated the WARN Act by failing to give timely written notice of the plant closing and/or mass layoff as required by 29 U.S.C. § 2102(a), which began on or about August 5, 2024.

64.    As such, Plaintiffs and those they seek to represent are "aggrieved employees" within the meaning of the WARN Act. 29 U.S.C. § 2104(a)(7).

65.    The WARN Act expressly authorizes an "aggrieved employee" to bring a civil action individually and on behalf of all those similarly situated in the United States District Court to seek relief for violations of the provisions of 29 U.S.C. § 2102. See 29 U.S.C. § 2104(5).

66.    Defendants' violations of the WARN Act were not in good faith, and Defendants had no reasonable grounds for believing that the plant closing or mass layoff they ordered was not in violation of the notice requirements under 29 U.S.C. § 2102.

## SECOND CAUSE OF ACTION

## Violation of the California Worker Adjustment and Retraining Notification Act, California Labor Code § 1400, *et seq.*

## (Cal-WARN Act)

67.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the above paragraphs.

68.    In addition to their claim under the federal WARN Act, Plaintiffs assert a claim under the California Worker Adjustment and Retraining Notification Act.

69.    Defendants are an employer within the meaning of the Cal-WARN Act. California Labor Code § 1400(b).

70.    Plaintiffs Granados Perez and Ortega and the CA Subclass were at all relevant times "affected employees" within the meaning of the Cal-WARN Act.

71.    The August 5, 2024, closing of SDLA's operations at each of the five

15

California Amazon delivery stations in City of Industry, Glendale, Hawthorne, Perris, and Santa Clarita constituted a mass layoff within the meaning of the Cal-WARN Act because it was a separation from a position for lack of funds or lack of work during any 30-day period of more than 50 employees. California Labor Code § 1400(c)-(d).

72.     To the extent the August 5, 2024, closing of SDLA's operations at each of the five California Amazon delivery stations in City of Industry, Glendale, Hawthorne, Perris, and Santa Clarita is not a "mass layoff" as defined in California Labor Code § 1400(c)-(d), the closings constitute a "termination" under California Labor Code § 1400(f) because it resulted in the cessation or substantial cessation of industrial or commercial operations at SDLA.

73.     The Cal-WARN Act requires employers to provide 60 days' notice of the mass layoff or termination to the affected employees, the Employment Development Department, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff and/or termination occurs. California Labor Code § 1401(a)(1)-(2).

74.     Prior to August 5, 2024, Defendants did not give any prior written notice of the mass layoff or termination to any affected employee, including Plaintiffs Granados Perez and Ortega and the CA Subclass.

75.     On information and belief, Defendants did not give any prior written notice to the California Employment Development Department, any local workforce investment board, and/or to the chief elected official of the city or county government within which the mass layoff and/or termination was ordered.

76.     Defendants violated the Cal-WARN Act by failing to give compliant written notice of the mass layoff and/or termination as required by California Labor Code § 1401, which began on or about August 5, 2024.

77.     The Cal-WARN Act requires an employer who violates its requirements to pay back pay at the average regular rate of compensation received by the employee during the last three years of his or her employment or the employee's final rate of compensation,

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

whichever is higher, as well as the value of the cost of any benefits to which the employee would have been entitled had his or her employment not been lost, including the cost of any medical expenses incurred by the employee that would have been covered under an employee benefit plan. California Labor Code § 1402(a)(1)-(2).

78.    Defendants' violations of the Cal-WARN Act were not in good faith, and Defendants had no reasonable grounds for believing that the plant closing or mass layoff it ordered was not in violation of the notice requirements pursuant to California Labor Code § 1401.

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code § 201, *et seq*.**

**(Waiting Time Penalties)**

79.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs.

80.    Plaintiffs Granados Perez and Ortega assert this count on behalf of the CA Subclass.

81.    California Labor Code § 201 requires employers to pay their employees all wages due at the time of discharge.

82.    California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employee's wages until the wages are paid in full or an action is commenced, up to a period of thirty days.

83.    By willfully failing to pay wages pursuant to the requirements of California Labor Code § 201, Defendants have violated California Labor Code § 203. The wages of Plaintiffs Granados Perez and Ortega and members of the CA Subclass thus continued to accrue as a penalty for an additional thirty days for each violation.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## **FOURTH CAUSE OF ACTION**

### **Violation of Nevada Revised Statutes § 608.020, *et seq.***

### **(Waiting Time Penalties)**

84.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs.

85.      Plaintiff Valenzuela asserts this count on behalf of the NV Subclass.

86.     Nevada Revised Statutes §§ 608.020-608.050 makes all earned and unpaid wages due and payable upon an employees' discharge, and requires employers to pay discharged employees all wages due within three days of the employee's discharge.

87.     Nevada Revised Statutes § 608.040 and § 608.050 provides that if an employer fails to timely pay such wages, the employer must, as a penalty, continue to pay the subject employee's wages until the wages are paid in full, up to a period of thirty days.

88.     By willfully failing to pay wages pursuant to the requirements of Nevada Revised Statutes § 608.020, *et seq.*, Defendants have violated Nevada Revised Statutes § 608.020, *et seq.* The wages of Plaintiff Valenzuela and the NV Subclass thus continued to accrue as a penalty for an additional thirty days for each violation.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs Uriel Granados Perez, Iris Ortega, and Hector Valenzuela, on behalf of themselves and a putative Class and subclasses of similarly situated former employees, pray for the following relief:

89.     Certification of the Class as a Class Action pursuant to Federal Rule of Civil Procedure 23(b) and designation of Plaintiffs as a representative of the Class and their counsel of record as Class Counsel;

90.     Certification of each subclass—the CA Subclass and the NV Subclass—as a Class Action pursuant to Federal Rule of Civil Procedure 23(b) and designation of the appropriate Plaintiffs as representatives of the subclasses and their counsel of record as Counsel for the subclasses;

91.     A declaration that Defendants, as joint employers, have violated the WARN

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    Act and/or the Cal-WARN Act;

2       92.    A judgment against Defendants and in favor of Plaintiffs and those they seek

3    to represent for back pay to the fullest extent permitted by the WARN Act, 29 U.S.C.

4    § 2104(a)(1)(A) and the Cal-WARN Act, California Labor Code § 1402(a)(1);

5       93.    A judgment against Defendants and in favor of Plaintiffs and those they seek

6    to represent for the value of any benefits, including but not limited to medical expenses

7    incurred by Plaintiffs and those they seek to represent that would have been covered under

8    an employee benefit plan, to the fullest extent permitted by the WARN Act, 29 U.S.C.

9    § 2104(a)(1)(B) and the Cal-WARN Act, California Labor Code § 1402(a)(2);

10      94.    A finding that Defendants' violations of the WARN Act and/or the Cal-

11   WARN Act were and are willful, not in good faith, and that Defendants had no reasonable

12   grounds for believing that its plant closing, mass layoff, and/or termination was not in

13   violation of the notice requirements of the WARN Act, 29 U.S.C. § 2102 and/or the Cal-

14   WARN Act, California Labor Code § 1401;

15      95.    A judgment against Defendants and in favor of Plaintiffs and those they seek

16   to represent for litigation costs, expenses, attorney's fees to the fullest extent permitted

17   under the WARN Act, 29 U.S.C. § 2104(a)(6) and the Cal-WARN Act, California Labor

18   Code § 1404 and other applicable law, and for discretionary costs pursuant to Federal Rule

19   of Civil Procedure 54(d);

20      96.    A judgment against Defendants for civil penalties to the fullest extent

21   allowable under the WARN Act, 29 U.S.C. § 2104(a)(3) and the Cal-WARN Act,

22   California Labor Code § 1403;

23      97.    An award of statutory waiting-time penalties equal to 30 days' wages,

24   pursuant to California Labor Code § 203;

25      98.    An award of statutory waiting-time penalties equal to 30 days' wages,

26   pursuant to Nevada Revised Statutes § 608.020, *et seq.*; and

27      99.    Such other and further relief as this Court may deem just and proper.

28

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1

## JURY TRIAL DEMANDED

2
      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the

3
Local Rules, Plaintiffs hereby demand a jury trial on all the claims in this action.

4

5
DATED: November 15, 2024      IRA L. GOTTLIEB

6
      JULIE GUTMAN DICKINSON
      HECTOR DE HARO

7
      SAMANTHA M. KENG
      Bush Gottlieb, A Law Corporation

8

9

10
By: _____

11
      HECTOR DE HARO

12
      Bush Gottlieb, A Law Corporation
      801 North Brand Boulevard, Suite 950

13
      Glendale, CA 91203
      hdeharo@bushgottlieb.com

14

15
      Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260